**James M. PICKENS, Plaintiff,**

v.

**CHILDREN'S MERCY HOSPITAL (a benevolent corp.), Defendant.**

**No. 87–0203–CV–W–6.**

United States District Court, W.D. Missouri, W.D.

Feb. 6, 1989.

Larry Delano Coleman, P.C., Kansas City, Mo., for plaintiff.

Floyd R. Finch, Jr., Gail M. Hudek, Blackwell, Sanders, Matheny, Weary & Lombardi, Kansas City, Mo., for defendant.

## MEMORANDUM AND ORDER

SACHS, District Judge.

The successful defendant, plaintiff's former employer, seeks an allowance of attorney's fees and sanctions under 42 U.S.C. § 1988 and Rule 11, F.R.Civ.Proc. Plaintiff's claim was presented in multi-count fashion, but the court limited the case to one of race discrimination in its order of September 7, 1988. Related claims failed largely because of a change of law or clarification of Missouri law during litigation. Defendant does not argue for an allowance for the claims other than the one that went to trial and does not break down its fee claim of some $31,000 to allocate a sum to the claims that were dismissed as a matter of law.[1]

Some of the pertinent facts are set forth in defendant's suggestions and will not be repeated. It is the court's recollection, however, that a number of circumstantial factors of arguable significance are omitted. The trial contention was that plaintiff security officer and ambulance driver was terminated for failing to notify a supervisor (most reasonably the nursing supervisor) that he was leaving the hospital prem-

---

1. The court does not suggest that an allowance would have been made on the State law claims, but considers it important to note the thrust of the post-trial claim for sanctions. The best prospects for recovery occur when claims are fatally flawed from the beginning, as a matter of clearly established law or where there are absolutely no facts arguably implicating a particular defendant in misconduct.

ises to check on the safety of family members, after having received a report of a fire in the apartment building and no later word of reassurance, as he had anticipated. The departure alone was not a factor in the discharge, according to defendant's trial testimony. Plaintiff's immediate superior, Gish, according to plaintiff's testimony, was advised of the departure when Gish came to work the next morning, and Gish did not criticize the conduct.

There was no evidence from the nursing supervisor that he or she would have called in a substitute ambulance driver or attempted to stop plaintiff from going home, if notified. Plaintiff testified that he did advise the switchboard of his whereabouts. The jury may or may not have believed that testimony, which was not necessarily controlling, but is a factor not clearly to be disregarded in the absence of an adverse finding.

Plaintiff's discharge came some weeks later after two "whistleblowers" had reported his conduct. The complaints seem directed more toward plaintiff's leaving (not now in issue) rather than his failure to notify the nursing supervisor. Landor, one of the "whistleblowers," did not testify, so it was impossible to determine whether racial bias or resentment may have been involved in his report. The absence was notable in that the court had specified that possible bias of the people causing the discharge might become an issue.[2]

There were other arguable soft spots in the defense although the court agrees with the jury and concludes the race bias case, all in all, turned out to be somewhat weak.

Defendant emphasizes that plaintiff failed to make a prima facie case in the manner prescribed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). That case is simply illustrative, however, of a typical method of making a prima facie circumstantial case. It seems surprising that defendant does not acknowledge that there is no common mold or pattern that the testimony must follow. *Furnco Const. Corp. v. Waters*,

438 U.S. 567, 577, 98 S.Ct. 2943, 2949, 57 L.Ed.2d 957 (1978). In light of the common incidence of racist attitudes and conduct, any "totally arbitrary" conduct by an employer may be treated as circumstantial evidence that racial bias tainted an adverse employer decision. *Id.* While defendant strenuously resists a conclusion that its conduct was arbitrary, much less totally so, there are enough mysteries and inconsistencies in the proof so that a discriminatory discharge cannot be considered an unreasonable contention here, particularly one so unreasonable as to justify sanctions. If plaintiff were 58 years old and a hospital employee for 25 years, I would suppose most juries would give him the benefit of the doubt and conclude that age discrimination had been shown. While this may be skewing the facts a bit, I am satisfied that race discrimination is far more prevalent than dislike for persons over 40 and that the searchlight of litigation like this was probably intended by Congress.

Sanctions against race discrimination plaintiffs and their counsel are rarely granted. *Bass v. Southwestern Bell Tel. Co.*, 817 F.2d 44 (8th Cir.1987); *EEOC v. Kenneth Balk & Assoc., Inc.*, 813 F.2d 197 (8th Cir.1987). As stated by Judge Posner, protective rules *against* sanctions are applicable to "a vulnerable group whose members need special encouragement to exercise their legal rights, like a racial minority." *Bittner v. Sadoff & Rudoy Industries*, 728 F.2d 820, 829 (7th Cir.1984). Such persons "were at the forefront of congressional concern in passing the attorney's fee awards act" and should seldom be punished by that legislation. *Id.* While sanctions are fairly applicable to the truly frivolous and unreasonable plaintiff's case, generally a ridiculous claim or one clearly contrary to law, this is not a case where the proof shows that the threat of sanctions should become a reality. On the contrary, it was within the realm of reason to contend that stereotypical attitudes toward blacks caused harsher discipline here than would have occurred in other instances

---

2. There was also testimony that plaintiff was told he had a personality problem with other employees, conceivably an earmark of racial tension.

when an ambulance driver left the premises briefly during a presumed family emergency without notification of the nursing supervisor.[3]

One of my concerns in making this ruling is that I avoid any serious departure from sanctions rulings of other judges on this court. Some such rulings have been well publicized and some are published. Most of the cases of which I am aware, like this case, turn on their own peculiar facts, and it is hazardous to generalize. There is one statement of a colleague in a reported case that perhaps deserves a further comment. In *Davidson v. Allis–Chalmers*, 567 F.Supp. 1532, 1539 n. 2 (W.D.Mo.1983), Judge Bartlett stated that a "firmly held belief in injustice by people who receive unfavorable employment actions, unsupported by any reasonable basis for believing that there was unlawful discrimination, is not enough to insulate the party and counsel from responsibility ... for pursuing meritless litigation." That may be true, but it would be erroneous, in my judgment, to insist on a substantial level of objective proof before denying sanctions. Subjective and nearly intuitive fact-finding is necessary in many cases, not least in reconstructing the "truth" in discrimination cases, and a plaintiff is entitled to hope for the best without a substantial amount of objective proof of discrimination.

Civil rights laws are necessary because racism pervades society and has a conscious or subconscious effect on much decision-making. Very little objective circumstantial proof beyond an unfavorable employment action is required to save a person making a good faith claim of racial discrimination from sanctions for filing a frivolous case.

The shoe is on the other foot when an employer is charged with racism in making subjective decisions. Many such decisions are almost inherently subjective or intuitive. Courts cannot fairly require a substantial level of objective proof from employers resisting claims of discrimination in

that context. *Compare, Watson v. Fort Worth Bank and Trust,* — U.S. ——, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988).

Judge Bartlett did not say, and I do not believe it necessary, that a plaintiff must have considerable objective proof before prosecuting a discrimination claim without fear of sanctions.

The motion for sanctions against counsel and plaintiff is hereby DENIED.

---

**3.** The proof does not demonstrate the common ambulance situation, with a group of attendants

always in readiness to leave, as at a fire station.